IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ANGELA R. JOHNSON,

       Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

No. C10-0068

RULING ON JUDICIAL REVIEW

_____

## TABLE OF CONTENTS

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.    PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.   PRINCIPLES OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.   FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
     A.    Johnson's Education and Employment Background. . . . . . . . . . . .  5
     B.    Administrative Hearing Testimony. . . . . . . . . . . . . . . . . . . . . . . .  5
         1.    Johnson's Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
         2.    Vocational Expert Testimony.. . . . . . . . . . . . . . . . . . . . . . .  7
     C.  Johnson's Medical History. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

V.    CONCLUSIONS OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
     A.    ALJ's Disability Determination.. . . . . . . . . . . . . . . . . . . . . . . . .  10
     B.    Objection Raised By Claimant. . . . . . . . . . . . . . . . . . . . . . . . . .  12

VI.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

VII.  ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Angela R. Johnson on May 3, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Johnson asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Johnson requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On December 27, 2006, Johnson applied for disability insurance benefits. In her application for disability insurance benefits, Johnson alleged an inability to work since November 2, 2006 due to back problems, depression, and leg tremors. On September 28, 2007, Johnson applied for SSI benefits. In her application for SSI benefits, Johnson alleged and inability to work since September 1, 2007.[1] Johnson's disability insurance benefits were denied on February 22, 2007. On August 21, 2007, her disability insurance benefits application was denied on reconsideration.[2] On September 11, 2007, Johnson requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 7, 2009, Johnson appeared via video conference with her attorney before ALJ Jo Ann L. Draper for an administrative hearing. Johnson and vocational expert Elizabeth M. Albrecht testified at the hearing. In a decision dated July 15, 2009, the ALJ denied

---

[1] Interestingly, the ALJ in her decision stated that "[i]n both applications, [Johnson] alleged disability beginning November 2, 2006." *See* Administrative Record at 14. Similarly, both parties in their respective briefs also indicate that Johnson's disability onset date is November 2, 2006 for both applications. Neither party mentions September 1, 2007 as the onset date for the SSI benefits application. *See* Johnson's Brief (docket number 13) at 1; Commissioner's Brief (docket number 15) at 3.

[2] The record does not contain any evidence regarding when the Social Security Administration ("SSA") denied Johnson's application for SSI benefits, either initially or on reconsideration. Similarly, neither the ALJ, nor the parties mention when the SSA denied Johnson's application for SSI benefits.

Johnson's claims. The ALJ determined that Johnson was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing her past relevant work as a collection clerk and insurance clerk. Johnson appealed the ALJ's decision. On March 1, 2010, the Appeals Council denied Johnson's request for review.[3] Consequently, the ALJ's July 15, 2009 decision was adopted as the Commissioner's final decision.

On May 3, 2010, Johnson filed this action for judicial review. The Commissioner filed an Answer on October 6, 2010. On December 22, 2010, Johnson filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she was not disabled and could perform her past relevant work as a collection clerk and insurance clerk. On February 22, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 15, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." Id.

---

[3] On June 11, 2010, the Appeals Council set aside its March 1, 2010 decision, and considered additional information, but ultimately denied Johnson's request for review. See Administrative Record at 1-3.

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in

the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Johnson's Education and Employment Background

Johnson was born in 1958. She is a high school graduate. After high school, Johnson studied two years at college. At the time of the hearing, Johnson had returned to school, and was taking college courses at Kaplan University.

A detailed earnings report for Johnson is contained in the record. The report covers Johnson's employment history from 1974 to 2008. Prior to 1979, Johnson had minimal or no earnings. Between 1979 and 2006, Johnson earned between $3,936.23 (1980) and $35,501.38 (1998). She earned $25,530.38 in 2006. She had no earnings in 2007 and 2008.

### B. Administrative Hearing Testimony

#### 1. Johnson's Testimony

At the administrative hearing, Johnson testified that she had "constant pain, all the time" in her lower back and legs. She stated that she uses a cane to help her walk. Johnson's attorney further questioned Johnson about how her pain and obesity:

> Q:   What, what did your -- how does your weight affect
>       your ability?

A: It has affected it, and I -- you know -- it's part of a catch 22, you diet and you take a little bit of weight off, so you start feeling great, but then you, you know, you make a wrong move or something, and then you're back at square one. And you don't feel like doing anything. Right now I try going to school on campus, try to walk a little bit more, but it really, really hurts to walk. It hurts to stand, it hurts to sit down. So you know, your tend to be probably more sedentary than you normally would. I try not to be, but it's just painful.

(Administrative Record at 43.)

Next, Johnson's attorney asked Johnson to describe her difficulties with depression:

Q: How are your moods, and how do you feel most days?
A: Oh it's -- you know I don't want to be whiny, but when I start thinking about when I get out of school will anybody hire me, you know, I did this so I could make myself more marketable. I thought my back would be better by now, but it isn't. So I'm just wondering, you know, am I going to get a job, will I be able to take care of myself. What if I can't do it? What will I do if I -- you know what, what will I do if I can't -- my parents aren't going to be around forever, they're elderly. . . .
Q: Okay. And so your moods vary quite a bit then?
A: Yeah, they do. They -- well I'm going to get up in the morning and say, okay, get up, get up, a new day, and by the time I'm ready to go to school, the mood's gone. I'm either, either I'm real dingy or I'm not getting out of bed, I'm sleepy. Those are the weeks I've slept days at a time, and not come out of my room at all.

(Administrative Record at 45-46.)

Johnson's attorney also asked Johnson to describe her functional abilities:

Q: Right. How much weight do you think you can lift and carry yourself?
A: I think that I probably shouldn't lift any more than ten pounds even though I get, I get upset when I'm trying to do something, I'm waiting, because I can [sic] get somebody to help me. I've never had, I've never had

6

> to worry about that before. Now it's like I can't do it,
> I have to wait for somebody to help me. . . .
>
> Q: Are you able to sit in one place for very long?
>
> A: No, uh-uh.
>
> Q: So how do you -- when you're at home, where --
> what's your favorite location?
>
> A: I'll sit on the side of my bed and look at TV, but then
> I'll get up and walk around, you know to bed. But my
> bed sits way up off the ground so that I can do -- stretch
> out my legs, you know.

(Administrative Record at 47-48.)

### 2.  *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who:

> is exertionally limited to the performance of no more than
> sedentary work, specifically this individual could lift and carry
> up to ten pounds, but no more than ten pounds occasionally,
> less than ten pounds frequently. This individual's ability to
> stand and walk during an eight-hour work day would be
> limited to no more than two hours. And the ability to sit
> would range anywhere from six to eight hours a day. The
> sitting and standing would need to be -- there would need to be
> a possibility to change postural positions, approximately every
> 30 minutes. These changes would mainly be from a seated
> position to a standing position where the individual could move
> and walk a little bit around the, the work area for brief periods
> of time. But most of the time this individual would be seated
> during the day. This individual does require and [*sic*] assistive
> device to walk, and can only occasionally climb, bend,
> balance, stoop, kneel, crouch, crawl. Should never climb
> ropes, ladders, or scaffolds. And this, and this hypothetical
> individual would need to be limited to a work environment free
> of [a] fast pace production requirement.

(Administrative Record at 54.) The vocational expert testified that under such limitations, Johnson could perform her past relevant work.

### C. Johnson's Medical History

On March 1, 2006, Johnson underwent a T-9 and T-10 laminectomy for thoracic stenosis. Specifically, Johnson had a history of progressive lower extremity numbness, tingling, and ataxia. On April 11, 2006, at a follow-up appointment, Johnson's surgeon found that Johnson's strength was 5/5 in all muscle groups. The surgeon concluded that Johnson had no active neurological issues.

On January 22, 2007, Johnson met with Dr. Harlan J. Stientjes, Ph.D., at the request of Disability Determination Services ("DDS"), for a psychological evaluation. Upon examination, Dr. Stientjes diagnosed Johnson with major depressive disorder. Dr. Stientjes opined that:

> [Johnson] can understand and remember simple to mildly complex instructions and can carry them out as long as pain is not significantly interfering. She interacts with others appropriately although is somewhat 'standoffish' and distrustful at times because she currently feels somewhat hurt. Social judgment and safety judgment both are believed to be adequate. Response to workplace changes would be adequate, for the most part, as long as they are within the physical boundaries of her capability.

(Administrative Record at 333.) Dr. Stientjes concluded that Johnson had physical limitations, but her cognitive abilities were "generally quite good."

On February 8, 2007, Dr. Philip Laughlin, Ph.D., reviewed Johnson's medical records and provided DDS with a Psychiatric Review Technique assessment for Johnson. Dr. Laughlin diagnosed Johnson with major depressive disorder. Dr. Laughlin determined that Johnson had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Laughlin concluded that:

> [Johnson's] allegations are credible to the extent that she has a mild mental impairment. [Johnson] does not manifest any significant or moderate restrictions of function with understanding and memory, self-care, and other [activities of daily living], social interaction, sustained pace, concentration

and attention, and adaption/executive function. There have not been significant episodes of deterioration that cause [Johnson] to withdraw or experience exacerbation of signs and symptoms that include deterioration of adaptive behaviors related to psychological factors.

(Administrative Record at 347.)

On February 22, 2007, Dr. James D. Wilson, M.D., reviewed Johnson's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Johnson. Dr. Wilson determined that Johnson could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Johnson could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations. Dr. Wilson concluded that:

> [Johnson] indicates she has pain in her low back, left hip and upper thigh. She takes ibuprofen and amitriptyline for pain and indicates they work for a few hours. She also does [physical therapy] exercises. She can only walk 30-40 yards and sit 45 minutes. It takes her longer to care for her personal needs but she can make simple meals, clean one room per day and do laundry bi-weekly. She can drive and shop for about 20 minutes at a time 2-3 times per week. . . . [Johnson's] credibility is slightly eroded due to her lack of ongoing care and follow up for the significant pain and limitations she is alleging. However she does have evidence of limitations related to her back and therefore limitations have been indicated which are reflective of the objective evidence and take into account her pain.

(Administrative Record at 357.)

On July 27, 2007, Johnson met with Dr. John D. Kuhnlein, D.O., at the request of DDS, for a consultative physical evaluation. Johnson reported to Dr. Kuhnlein that she had difficulty with standing, sitting, walking, climbing stairs, lifting, pushing and pulling,

carrying, gripping, and grasping due to severe back, leg, and hip pain. Specifically, she told Dr. Kuhnlein that:

> she cannot sit or stand for long periods of time because her extremities go numb. She states it takes a long time to clean her apartment due to the pain. Ms. Johnson also states that she has problems lifting anything over five pounds due to her allergies. She also relates problems with driving and riding in a car.

(Administrative Record at 364.) Upon examination, Dr. Kuhnlein found that Johnson could occasionally lift, push, pull, and carry 20 to 30 pounds. Dr. Kuhnlein also determined that Johnson should frequently change positions from sitting, standing, and walking.

In April 2008, Johnson met with Dr. Matthew A. Howard, III, M.D., complaining of low back pain and lower extremity pain. Upon examination, Dr. Howard diagnosed Johnson with L4-5 spinal stenosis. Dr. Howard recommended a L4-L5 laminectomy and discectomy as treatment. On June 5, 2008, Johnson underwent L4-L5 and L5-S1 discectomies. She also underwent a L4-L5 laminectomy.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Johnson is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Johnson had not engaged in substantial gainful activity since November 2, 2006. At the second step, the ALJ concluded from the medical evidence that Johnson had the following severe combination of impairments: thoracic and lumbar spinal stenosis status post laminectomy, leg tremors, obesity, depression, anxiety, and a history of substance abuse. At the third step, the ALJ found that Johnson did not have an impairment or combination of

impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Johnson's RFC as follows:

> [Johnson] has the residual functional capacity to perform sedentary work . . . such that the individual could lift 10 pounds occasionally and less than 10 pounds frequently; stand/walk no more than 2 hours in an 8 hour workday; sit 6 hours in an 8 hour workday; postural changes to alternate sitting and standing every 30 minutes to move around for brief periods with majority of time spent in a seated position. The individual would require an assistive device to walk; occasionally climb, bend, balance, stoop, kneel, crouch, and crawl; and never climb ropes, ladders, or scaffolds. Additionally, this individual would be limited to a work environment free of fast paced production requirements.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Johnson was capable of performing her past work as a collection clerk and insurance clerk. Therefore, the ALJ concluded that Johnson was not disabled.

### B. Objection Raised By Claimant

Johnson argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Johnson maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Johnson's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The

ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Johnson's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Johnson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment. At one point or another in the record, either in forms completed in connection with the application, in medical records or other statements, [Johnson] reported activities of daily living including attending college classes, preparing simple meals, light housework, laundry, attending church, shopping, reading, watching television, and visiting with friends, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The record reveals that [Johnson] failed to follow-up on recommendations made by the treating doctor, which suggest that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. After MRI findings in June 2006 showed a significant herniated disc, [Johnson] waited more than a year before seeking additional surgical treatment for this condition. [Johnson] did eventually undergo surgery for the alleged impairment. While that fact would normally weigh in [Johnson's] favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. In addition, while [Johnson] alleged symptoms of anxiety and depression, she did not seek treatment from a mental health professional until September 2008, after which significant improvement is noted in the treatment records. [Johnson] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [Johnson's] favor, but the medical records reveal that the medications have been relatively effective in controlling [Johnson's] symptoms. The record reveals that [Johnson's] allegedly disabling impairment(s) was present at approximately the same level of severity prior to the alleged onset date. The fact that the impairment(s) did not prevent [Johnson] from working at that time strongly suggests that it would not currently prevent work. [Johnson's] last job ended due to reasons unrelated to her alleged impairments and she has been

> able to attend college classes on a fairly regular basis during
> the period of alleged disability. [Johnson] admitted to certain
> abilities that provide support for part of the residual functional
> capacity conclusion in this decision. Therefore, the
> undersigned finds [Johnson] has been less than fully credible
> regarding allegation of total disability, and has tended to
> verbally underestimate her own abilities.

(Administrative Record at 21-22.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Johnson's treatment history, medical history, functional restrictions, effectiveness and side effects of medications, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Johnson's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Johnson's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly determined Johnson's credibility with regard to her subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1.   The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.   Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.   The Clerk of Court is directed to enter judgment accordingly.

DATED this ___24th___ day of May, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA